WHITEWATER TILE AND PRESSED BRICK MANUFACTURING COMPANY, Appellant, vs. BAKER, Respondent.

*March 16—April 5, 1910.*

*Corporations: Fraudulent issue of stock: Pleading: Presumption as to overissue: Ratification: Recovery of par value: Accounting as to profits.*

1. From allegations in a complaint that defendant subscribed and paid for ten shares of the stock of the plaintiff corporation; that acting with the other stockholders he fraudulently caused to be issued to himself certificates representing sixteen shares; and that he afterwards sold the additional six shares, for which he had never paid, it cannot be inferred that there was any overissue of stock, and therefore it must be assumed, on demurrer, that the six shares were legally issued except for the fact that they were not paid for.

2. Sec. 1753, Stats. (1898), does not preclude the sale of stock in part at least upon credit; and the word "void" as used therein does not mean incapable of validation, but stock issued in violation of that section may afterwards be validated by payment of full consideration therefor.

3. Where a subscriber for stock in a corporation fraudulently procures the issuance to himself of certificates for a larger number of shares than he has subscribed and paid for, the corporation may elect to ratify the transaction, treat the additional shares as validly issued, and sue to recover the par value thereof from him.

[4. Whether, when such subscriber is an officer of the corporation, he can be compelled to account for profits made by him on a sale of the fraudulently issued stock, over and above the par value, not determined.]

APPEAL from an order of the county court of Walworth county: JAY F. LYON, Judge. *Reversed.*

This is an appeal from an order sustaining a general demurrer to the plaintiff's complaint. The complaint alleged, in substance, that the plaintiff is a corporation duly organized by the filing of proper articles of organization May 4, 1903, with an authorized capital stock of $20,000 divided

into 200 shares of the par value of $100 each, more than fifty per cent. of which was subscribed and more than twenty per cent. thereof paid in; that the first meeting of stockholders was held May 16, 1903, and at such meeting the defendant *Baker* and George Gillen and Nim Johnson were elected directors; that thereafter the said directors elected *Baker* president, Johnson secretary and treasurer, and Gillen vice-president and manager of the corporation, all of which persons qualified and entered on their duties; that the business of the corporation is the manufacture of brick and tiles, and that real estate and machinery was purchased and manufacture begun; that the defendant subscribed for ten shares of stock, agreeing to pay $1,000 therefor, and that thereafter, on or about May 26, 1903, while still president and director, he with the other directors

"caused to be issued and delivered to himself certificates representing sixteen shares of the capital stock of said company, and that said stock was so issued to him in pursuance of a fraudulent plan or scheme whereby certificates of stock at least sixty per cent. in excess of the amount of stock paid for by them were issued to each of said directors and officers; that said defendant accepted stock certificates representing sixteen shares of the capital stock of the plaintiff corporation; that he paid for ten of said shares of stock $1,000, and that the stock of said corporation was then worth the sum of at least $100 per share, and that said plaintiff is informed and believes that said defendant has never paid any other consideration for said stock so issued to him except the sum of $1,000 as aforesaid."

The complaint further alleges that the defendant thereafter sold said stock for which he had never paid, and received therefor at least $100 per share; that the issuance of said stock certificates for sixteen shares was in violation of defendant's duty as director; that the profits made by defendant on the sale of said stock, amounting to $600, rightfully belong to the plaintiff; that plaintiff has demanded an ac-

counting of defendant and payment of such profits, but defendant has refused to account for or pay over the same. The prayer is for an accounting and judgment for $600, together with all other amounts received by defendant in violation of his duties as director of the plaintiff corporation, with interest on such sums from May 26, 1903.

For the appellant there was a brief signed by *Page & Ferris,* and oral argument by *J. W. Page.*

*Edwin T. Cass,* for the respondent.

WINSLOW, C. J.    There is no express allegation that there was any overissue of stock, nor can that fact be legitimately inferred from anything stated in the complaint; therefore it must be assumed that the six shares of stock issued to the defendant were legally issued except for the fact that they were not paid for.    The simple question presented, therefore, is whether the corporation may elect to affirm the transaction, treat the stock as valid, and sue the person who received the stock either for the par value or for the par value and the profits made by him on its resale.

As to the recovery of the par value at least, we can entertain no doubt.    It is true that sec. 1753, Stats. (1898), forbids the issuance of stock "except in consideration of money or labor or property, estimated at its true money value, actually received by it, equal to the par value thereof," and provides that all stock not so issued shall be void; but this does not mean that every stock subscription must be paid in full before the subscriber becomes a stockholder, but only that the consideration paid or to be paid must be equal to the par value.    The statutes contemplate that stock may be sold in part at least upon credit, and that the balance due may be called in from time to time, and even that such stock may be transferred and the original holder released from liability for the amount unpaid thereon.    Secs. 1754, 1756, 1757, Stats. (1898); *Shannon v. Stevenson,* 173 Pa. St. 419, 34 Atl. 218.

This court held in *Haynes v. Kenosha E. R. Co.* 139 Wis. 227, 119 N. W. 568, 121 N. W. 124, that the word "void," as used in this section, did not mean incapable of validation, but that bonds issued in violation of the section could be thereafter validated by payment of full consideration therefor. The same reasoning applies with equal force to stock. If, therefore, *Mr. Baker* at any time before suit brought had paid for this stock it would have been validated. Such being the case, it is impossible to see why the corporation, after knowing the facts, might not elect to ratify the transaction (the stock not being an overissue), treat the stock as validly issued, and sue to recover what the defendant owes on the basis that the stock is valid. In such an action the defendant could not be heard to say that the stock was void simply because of his own wrongful act. He would be taking advantage of his own wrong. Nor does the case of *First Avenue L. Co. v. Parker,* 111 Wis. 1, 86 N. W. 604, lay down any different doctrine. That was an action against the bondsmen of a secretary of a corporation to recover the value of stock issued to himself without consideration and alleged to have been sold to innocent purchasers. There having been no validation of the issue of the stock by payment of its price or by action of the corporation, it was held that no injury to the corporation was shown, because the stock was void in whosesoever hands it was. The distinction between the two cases is manifest.

Whether the defendant, being an officer of the corporation, may be compelled to account for profits made by him upon his resale of the stock over and above the par value is a question which was not adequately argued and which we do not decide. On the facts stated he is liable for the par value at least.

*By the Court.*—Order reversed, and action remanded with directions to overrule the demurrer.